STATE v. EMIL THANG.[1]

February 17, 1933.

No. 29,016.

L. D. Barnard, for appellant.

Henry N. Benson, Attorney General, James E. Markham, Deputy Attorney General, and L. J. Lauerman, County Attorney, for the state.

[1]Reported in 246 N. W. 891.

DIBELL, JUSTICE.

The defendant was convicted in Renville county of grand larceny in the first degree and appeals from the order denying his motion for a new trial. The indictment was under G. S. 1923 (2 Mason, 1927) § 10369. It alleges that on September 1, 1930, the defendant misappropriated $1,000 before that time received by him as guardian of one Brede O. Strand, an incompetent person.

■ As far back as 1911 Brede O. Strand, an incompetent, came under guardianship in the probate court of Renville county. In 1923 one W. C. Hanson became his guardian in succession to another. At this time he and the defendant owned a controlling interest in the State Bank of Sacred Heart. In August, 1926, the defendant bought Hanson's interest, and as a part of the transaction it was understood that the defendant should succeed Hanson as guardian of Strand and apparently would succeed him as representative of other estates of which Hanson was guardian. Hanson resigned as guardian of Strand, and on August 26, 1926, he filed his final account showing $1,107.67 due the estate. The amount claimed to have been embezzled by the defendant is $1,000. There is no question as to the $107.67. The order accepting Hanson's resignation appointed the defendant his successor and directed a final hearing to be had on September 13, 1926. On August 26, 1926, the defendant filed with the probate court a writing in which he stated that he had investigated the final account and found the balance remaining correct, and waived any notice of the hearing on the account and accepted it as true. A delay ensued for which we find no explanation. On July 31, 1928, the defendant filed his bond and oath of office as guardian, and letters of guardianship were issued to him.

On August 31, 1926, Hanson deposited $1,000 in the guardianship account; or at least the books show that he did so. There was a credit slip to that effect. On September 1, 1926, a charge slip was made by the defendant against the guardianship account in the sum of $1,000. The defendant testified that he deposited to his personal account on September 1, 1926, $4,000. This was made up

of $1,000 from the Strand guardianship—or at least the jury might find it so—and there is a suggestion that the balance was the proceeds of an accommodation note. It could be inferred, we think, that Hanson was using trust money in buying bank stock and that the defendant followed the plan or coöperated with him.

Hanson resigned on August 25, 1926, and the defendant took his oath to the petition for resignation. It was filed on August 26, 1926. The account was to be heard on September 13, 1926. The order of the probate court recites that it came on for hearing on September 13, 1926. The order of discharge was entered July 31, 1928, reciting that there was on hand $1,107.67. On that day Hanson was discharged, and the defendant was appointed guardian. On August 11, 1928, Thang wrote the probate judge as follows:

"Your letter of August 2nd, is at hand, and we note that an order discharging Mr. W. C. Hanson will be issued upon receipt of a receipt from me showing that the cash and personal property listed in Mr. Hanson's final account has been turned over to me. In reply wish to state that all of the personal property as well as the cash was turned over to me at the time that Mr. Hanson left and that everything as stated in the final account was in good order."

The defendant claims that he did not intend to admit the receipt of the $1,000. It may be inferred that Hanson went to California in 1926, about the time of the original transaction.

On January 11, 1930, the probate court required the defendant to file an inventory and account of his guardianship. On April 23, 1930, the probate court of its own motion, the defendant having defaulted, removed him as guardian and appointed another. The newly appointed guardian received $107.67, and in August or September, 1930, demanded $1,000, the balance claimed to be due the estate and which should be on hand with the defendant. The defendant answered that he did not have the money and was unable to pay. He hardly denied his liability. At another time he stated to his successor that he had used $1,000 to pay a debt of Hanson to a Montevideo bank. Under circumstances such as these a jury

might find an embezzlement, that is, it might find that the defendant had received $1,000 for which he failed to account on demand and pay to his successor in trust. This $1,000 should have been under his control in 1926 and in 1928, as he admitted that it was, and so still in his possession in 1930.

■ A number of rulings are assigned as error. The county attorney throughout objected to proper testimony and secured erroneous rulings. Upon going through the testimony laboriously we do not find an erroneous ruling of substance which was not at sometime in the trial corrected or its effect obviated. We do not find that the defendant was not at sometime in the trial allowed to put before the jury the proper testimony which he sought to give and which was before that time erroneously excluded.

■ The claim that the three-year statute of limitations has run is, we think, without merit. If the original wrong was done in 1926, it was carried along through 1928, when the account was settled by the probate court. At that time the defendant said, or the jury could have found that he said, that the $1,000 was in the account. In 1930, when he met the positive demand for payment, he refused because he did not have the money and said that it had been used.

Order affirmed.

HOLT, JUSTICE (dissenting).

I dissent. The important fact is whether Hanson, on August 31, 1926, deposited in his account as guardian $1,000 belonging to the ward. If that money was neither Hanson's nor the ward's but was defendant's money, which under his agreement of purchase with Hanson was to be used to release the pledged stock defendant had bought, then it never rightfully became a part of the ward's funds. Unless this $1,000 which defendant charged off the ward's account on the next day, September 1, 1926, was rightfully the ward's money, the crime charged against defendant was not established. I think the erroneous rulings referred to in the opinion prevented defendant from clearly laying before the jury the agreement between Hanson and defendant concerning the purchase of the former's in-

terest in the bank and the part this ward's account was to have in the transaction. Since apparently the agreement was not in writing, at least in so far as concerned the guardian's account, the only way to prove it was by the conversations between Hanson and defendant. No connected story of such conversations was permitted. In my opinion there should be a new trial.