## STATE *v.* JAMES
[No. 7, October Term, 1953.]

*Decided November 5, 1953.*

116

The cause was argued before SOBELOFF, C. J., and DELAPLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Ambrose T. Hartman, Assistant Attorney General,* with whom were *Edward D. E. Rollins, Attorney General,* and *John L. Sanford, Jr., State's Attorney for Worcester County,* on the brief, for the appellant.

Submitted on brief by *William H. Price* and *Staton, Whaley & Price* for the appellee.

HAMMOND, J., delivered the opinion of the Court.

The question to be decided in this case is whether Maryland can try criminally a father living in the State on the charge of wilful failure to support his children who live in another State.

The appellee and his family formerly resided in Delaware. In 1950 he was there indicted for desertion and non-support of his two minor children, and on a plea of guilty, was ordered to pay a lump sum for past non-support and Twenty Dollars a week for future support. Sometime in 1951 he moved to Worcester County, where he has since continued to live, and on March 3, 1953, the Grand Jury of that County indicted him for failure to support his two children from September 1, 1952 to the date of the indictment. He moved to dismiss the indictment on two grounds: first, that as required by the continuing sentence of the Delaware Court, which has jurisdiction of his minor children, he has "fully paid through March 6, 1953, all of the money which he is required to pay under said judgment of said Superior Court of Delaware", and second, that the children are not residents of, and are not in, Maryland,

so that he has committed no crime against the State of Maryland and its Courts have no jurisdiction.

The State filed a replication to the motion to dismiss, in which it said that the crime of which the appellee was convicted by the Superior Court of Sussex County, Delaware, was for acts committed in that State prior to April, 1950 and that the crime for which he was indicted in Maryland was for the wilful neglect to provide for the children from September 1, 1952 to March 3, 1953, in direct violation of Section 96 (b) of Article 27 of the Code, 1951 Edition. In addition, it was further set forth that: "the acts for which the traverser herein stands indicted in the instant case is not for any acts violative of the Delaware laws, but for acts of omission directly violative of the criminal laws of the State of Maryland", because the crime of non-support was committed in the domicile of the accused, namely, Worcester County, "without reference to the place where the proper performance of the plain legal duty would confer benefits." The replication added that the accused had not complied with the order of the Delaware Court and had not paid the sums by it directed to be paid.

After argument the Circuit Court for Worcester County granted the motion to dismiss the indictment for the reason that: "there has been no offense against the laws of the State of Maryland", and the State appealed.

The appellee has moved to dismiss the appeal, arguing that the Court below entered no final judgment. The motion must be denied. In *State v. Buchanan,* 5 H. & J. 317, it was held that a writ of error lies at the instance of the State to review a judgment sustaining a demurrer to an indictment and discharging the accused. In *State v. Adams,* 196 Md. 341, Judge Markell reviewed the *Buchanan* case and the decisions of this Court, both before and after the Acts of 1872 and 1892, relating to appeals, and concluded that: "Since 1892 this court has repeatedly followed, usually without mentioning,

the *Buchanan* case—or the early practice followed in that case—in reversing on appeal judgments sustaining a demurrer to an indictment", adding that the appeal in such cases is considered in lieu of or "as upon" a writ of error. See *State v. Floto,* 81 Md. 600, 602, 32 A. 315; *State v. Archer,* 73 Md. 44, 20 A. 172; *State v. McNally,* 55 Md. 559; compare *State v. Gregg,* 163 Md. 353, 163 A. 119; *State v. Mariana,* 174 Md. 85, 197 A. 620; and *Harris v. State,* 194 Md. 288, 71 A. 2d 36, 12 Md. L. R. 68 at 73.

In *State v. Wade,* 55 Md. 39, the lower court quashed the indictment. The judgment, so doing, was the only judgment in the record. A motion to dismiss the appeal because there had been no final judgment was denied. Judge Alvey, referring to the quashing of the indictment, said: "That was a final termination of the prosecution upon the particular indictment, and the defendant was necessarily discharged from all further proceeding thereon. Whether the State may proceed on another indictment would depend upon the action of a future grand jury. It is the right of the State to have the defendant tried upon the present indictment, unless it be determined, in some legal and proper manner, that the indictment is legally insufficient. The motion to dismiss therefore must be overruled." See also *State v. Hodges,* 55 Md. 127, where the same result, under the same reasoning was reached in an appeal in which the lower court had entered a judgment sustaining a demurrer to the indictment, there being no other judgment in the case.

Under *Rule 3* of the *Criminal Rules of Practice and Procedure,* demurrers and motions to quash were abolished. The relief sought by them now must be sought "only by motion to dismiss or to grant appropriate relief". In *State v. Carter,* 200 Md. 255, 89 A. 2d 586, the appeal was by the State from an order of the Criminal Court of Baltimore, granting a motion to dismiss an indictment charging malfeasance in office. The State's right to appeal was not even challenged and this Court reversed the order of the Criminal Court.

The docket entries in the instant case include the following: "1953 Mch. 30. Judgment: Motion to dismiss indictment granted". It is clear that the State had the right to appeal.

On the merits the appellee says that the prosecution under the challenged indictment would place him in double jeopardy because he has already been sentenced by the Delaware Court for the non-support of his children, and according to his brief, has paid: "the full amount required by the Court of the children's domicile to be paid." It is admitted, however, in the brief that the payment was late. The pleadings show on their face that at the time the indictment was brought, the appellee had not paid since September 1, 1952. If the appellee has paid since the bringing of the indictment, this would perhaps gratify the requirements of the Delaware order, although we express no opinion on that point. Clearly, however, it would not avoid the fact that he had not supported the children for the period named in the Maryland indictment. The State does not seek to try the appellee here for violation of his Delaware conditional release but for a new violation in Maryland of the continuing offense of non-support. In *Hite v. State,* 198 Md. 602, 84 A. 2d 899, Hite was convicted for non-support, and sentenced, but sentence was suspended on condition that he would provide future support. When he was tried for violation of his parole, the Court imposed an additional sentence. It was held by this Court that the only punishment which could be given him for the violation of his parole was the sentence given on his original trial and which was then suspended. Judge Marbury, for the Court, however, added: "Nothing we have said in this opinion will prevent his being prosecuted again if he fails to support his child."

The crime of non-support is a continuing offense. In *Ellingham v. State,* 163 Md. 278, 162 A. 709, this Court discussed, in reaching its decision, the nature of a continuing offense. It adopted a definition taken from *State v. Jones,* 201 N. C. 424, 160 S. E. 468, as follows:

"Wharton defines a continuing offense as a transaction or a series of acts set on foot by a single impulse, and operated by an unintermittent force, no matter how long a time it may occupy. *Crim, Pleading* 474. It is an offense which continues day by day. . . The prosecution of an offense of this nature is a bar to a subsequent prosecution for the same offense charged to have been committed at any time before the institution of the first prosecution, but it is not a bar to a subsequent prosecution for continuing the offense thereafter, as this is a new violation of the law." The North Carolina case from which the quotation was taken was one dealing with the non-support of his children by a father, in which it was held that the non-support was a continuing offense. In *Self v. United States,* 150 F. 2d 745, the Court of Appeals for the Fourth Circuit held that the obligation to render military service in time of war is a continuing one and prosecution for failure to obey the order of the Draft Board is no bar to a subsequent prosecution for subsequent failure to obey another such order. The Court said: "The obligation to render military service is inherent in citizenship and may be compared with the obligation of a father to support his children. A conviction of a father for refusal to support his children is not a bar to a later prosecution for a future neglect of his obligation." See also *Lichenstein v. Hodgson,* 126 N. Y. 647, 27 N. E. 378; *State v. Morgan,* 155 Iowa 482, 136 N. W. 521; and *In re Baurens,* 117 La. 136, 41 So. 442.

If it be assumed that Delaware could punish the appellee for non-support from September 1, 1952 to March 3, 1953, either under the original order or by a new prosecution, the rule of double jeopardy would not bar prosecution here for violation of Maryland law. The same act may be a crime against two sovereignties, and, where it is, double jeopardy does not apply. *Bloomer v. State,* 48 Md. 521; *Rossberg v. State,* 111 Md. 394; *Hebert v. Louisiana,* 272 U. S. 312, 71 L. Ed. 270; and

*Jerome v. United States,* 318 U. S. 101, 87 L. Ed. 640, 643.

The appellee's major contention on the merits is that the offense charged in the indictment is not a crime under the laws of Maryland since the State lacks legislative authorization to try him for non-support of his children who are in another State.

Section 96 (b) of Article 27 of the Code, 1951 Edition, provides, in part, as follows: "Any parent who shall desert or wilfully neglect to provide for the support and maintenance of his or her minor child shall be deemed guilty of a misdemeanor, and upon conviction in any court of the State having criminal jurisdiction . . ." may be fined or imprisoned, or both. It has been held that the statute establishes two separate offenses, that of desertion and that of wilful neglect to support. *Pritchett v. State,* 140 Md. 310; and *Wald v. Wald,* 161 Md. 493. The appellee argues, first, that the State has criminal jurisdiction only of offenses committed within its borders and the offense is committed where the acts constituting the crime are done, and second, that the purpose of statutes of the kind of Section 96 (b) of Article 27 is to keep the children from becoming charges of the State. The first contention really begs the question because if the Maryland statute is read as proscribing failure to support, if the father is domiciled here, regardless of the location of the children, the failure to support is the act of omission at which the finger of the statute points. We pass to consideration of the second contention, which was adopted by the Court below. There are cases using language which, in the abstract, support the appellee in his argument. One line of such cases was decided on the statutes involved, which, unlike ours, indicated a restricted legislative intent. The other line of such cases was where the prosecution was brought in the jurisdiction in which the neglected wife or child was resident, the husband or father living elsewhere, and the interpretation of the statute which is urged

upon us by the appellee was invoked to sustain jurisdiction.

There is another line of cases (we have found no contrary decisions where the facts and the statutory language involved were like those here present), holding that the purpose of a non-support statute is not only to prevent a neglected wife or child from becoming a public charge, but that the higher and more important purpose of the Legislature was to assist deserted or neglected wives or children in directly procuring support, to punish the infliction of this kind of wrong upon them, and by the fear of such punishment to deter husbands or fathers from leaving their families to endure privation. The cases so reading the statutes hold that one within the State is amenable to the statute, whether his wife or children are in the State or not. On the theory of these cases, the offender within the jurisdiction must make provision for the support of his wife and children while residing there, whether they reside there or elsewhere. A leading case holding this view is *Commonwealth v. Acker*, (Mass.) 83 N. E. 312. There Acker was a resident of Massachusetts. His child had been born and had always lived in Nova Scotia. The Court convicted him of non-support, and in speaking of his failure to support the child, said: "If he fails to do this, his neglect of duty occurs here, without reference to a place where the proper performance of his duty would confer benefits." It is to be noted that the Massachusetts statute construed in the Acker case provided that the complaint could be made to the Court of the district in which the husband and the wife or. either of them are living.

The Courts of Pennsylvania have placed a construction upon its non-support statute similar to the Massachusetts holding. See *Commonwealth v. Husinka* (Pa. Super.) 193 A. 380; and *Commonwealth v. Sanders* (Pa. Super.) 169 A. 470. These cases were under a statute requiring a husband or father "being within the limits of this Commonwealth" to support his wife or child.

Louisiana has adopted a similar view, expressed in the case of *State v. Borum* (La.) 178 So. 371. So also has Tennessee. In *Smith v. State* (Tenn.) 4 S. W. 2d 351, the highest court of Tennessee said: "When a citizen of another State, having assumed the legal obligation of the support of a wife or child, removes to this state and takes up his residence here, he comes burdened with the same duty and obligation, and for him to continue in the state without meeting or performing such obligation is to violate not only the letter but the spirit of the statute."

Delaware, the State in which the children of the appellee live, takes the same view. See *State v. McCullough*, 40 A. 237; and the recent case of *In re Alexander*, 36 A. 2d 361, where the highest Court of Delaware says, at page 364: ". . . Having in mind the purposes of this statute, we are of the opinion that the duty of a husband and father to support a necessitous wife and child is a continuing one which duty accompanies him wherever he may go, and that when he comes into this State and becomes amenable to our laws he is accompanied by these same duties which exist while he is in this State. . . Indeed few, if any, cases can be found in direct conflict with the stated views. There have been a few cases holding that proceedings must be had in the State where the original desertion took place. Most of these will be found to involve desertion or abandonment alone, as distinguished from a failure of future support, or where the two matters are so blended conjunctively as to make one offense."

There is no doubt that a State has the legislative power to make a resident subject to criminal prosecution for failure to support a dependent who lives outside of - the State. *Restatement, Conflict of Laws*, Section 457. The comment under that section puts the matter in this wise: "Thus, a State in which a minor child is domiciled may impose a duty upon a parent who is for any reason subject to the jurisdiction of that State irrespective of whether the parent is domiciled there

or in another State. Conversely, a state may impose a duty upon a parent who is domiciled in the state although a child is neither domiciled in the state nor otherwise subject to the jurisdiction thereof." Cf. *George v. George,* (N. J.) 23 A. 2d 599; and *Corn Exchange Bank v. Coler,* 280 U. S. 218, 74 L. Ed. 378.

We have then only to determine whether the Maryland Legislature has exercised its power by the provisions of Section 96 (b) of Article 27 of the Code, 1951 Edition. The statute was originally enacted in 1896, and at that time, and for forty-nine years thereafter, there was no specific averment as to territorial jurisdiction. In 1945, by Chapter 719 of the Acts of that year, the law was amended to add these words: "Any person charged with violation of this Section may be prosecuted in the jurisdiction where he or she or the child resides." A similar sentence was added to the preceding subsection of Sec. 96, dealing with desertion and non-support of a wife. The added sentence would seem to evidence a legislative intent that the purpose of the statute is to punish a violation of the duty of support wherever it occurs in Maryland, without reference to the place where performance of the duty would confer a benefit. A literal reading of the added language embraces a case where the non-performing parent is in the State and the dependent child is elsewhere, as in the instant case. We see no reason to construe the statute in a narrower way, believing that the spirit as well as the letter of the law is gratified by a construction which follows that given similar statutes in similar cases by other States. We perceive no reason why Maryland should afford a haven to a father who wilfully neglects to support his child, and so, within our borders, omits to do that which the statute says that he should do, or be guilty of a crime.

It is no answer to plead, as the appellee does, that Article 89C of the Code, 1951 Edition—the Uniform Reciprocal Enforcement of Support Act—must be substituted as a remedy for the criminal prosecution sought

by the State. Section 3 of Article 89C provides that the remedies provided in that Article: ". . . are in addition, and not in substitution for any other remedies."

Beyond this, the appellee could not make the argument he makes here if the provisions of Article 89C of the Code, 1951 Edition, had been invoked. Section 4 thereof provides: "The duty of support imposed by the laws of the State . . . and the remedies provided for enforcement thereof, including any penalty imposed thereby, bind the obligor regardless of the presence or residence of the obligee."

When we consider the pertinence and significance of Section 4 in relation to the crime charged here under Section 96 (b) of Article 27 of the Code, we note that Section 4 had become the law before the beginning of the period during which the appellee is charged with failure in Maryland to support his children. Section 4 of Article 89C is found under the heading "General Provisions". It is not a mere declaration by a subsequent Legislature as to the meaning of a statute which had been passed by a predecessor, but is a positive enactment which, in effect, says that the duty of support imposed by Section 96 (b) of Article 27—one of the "laws of this State", and the penalty imposed thereby binds the appellee regardless of the presence or residence of his children.

The indictment challenged by the appellee is valid and he must stand trial under it. The judgment granting the motion to dismiss the indictment is reversed.

*Judgment reversed, with costs, and case remanded.*