**STATE of Tennessee**

v.

**Robert Leonard FLATT**

Court of Criminal Appeals of Tennessee, at Nashville.

July 18, 2006 Session.

Oct. 3, 2006.

Application for Permission to Appeal Denied by Supreme Court March 5, 2007.

David Brady, District Public Defender, and John B. Nisbet, III, Assistant Public Defender, for the appellant, Robert Leonard Flatt.

Paul G. Summers, Attorney General and Reporter; Preston Shipp, Assistant Attorney General; William Edward Gibson, District Attorney General; and Beth E. Willis, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

ALAN E. GLENN, J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., joined. GARY R. WADE, Sp. J., not participating.

Following a bench trial, the defendant, Robert Leonard Flatt, was convicted of violating the Sexual Offender Registration and Monitoring Act, Tenn.Code Ann. §§ 40–39–101 to –111,[1] a Class A misdemeanor, and sentenced to eleven months and twenty-nine days. The defendant raises four issues on appeal, arguing that: (1) the trial court erred by allowing a Tennessee Bureau of Investigation employee to testify as a records custodian; (2) the evidence was insufficient to support his conviction; (3) the indictment was defective because it did not specify a date; and (4) he was improperly sentenced. Following our review, we affirm the judgment of the trial court.

---

1. This Act has been repealed and replaced with the Tennessee Sexual Offender and Violent Sexual Offender Registration, Verification, and Tracking Act of 2004. Tenn.Code Ann. §§ 40–39–201 to –211 (Supp.2005).

*FACTS*

On March 25, 1999, the defendant pled guilty to attempted aggravated sexual battery and was sentenced as a Range II, multiple offender to eight years, with one year to be served in confinement and the balance on probation, and required to comply with the sex offender registry process.

At the defendant's January 10, 2005, bench trial on the violation charge, Elaine Bomar, a law enforcement information coordinator with the Tennessee Bureau of Investigation (TBI) assigned to the Sexual Offender Registry, testified that she and five other information coordinators were responsible for administrating Tennessee's sexual offender registration and monitoring database, which maintains records on over 7000 registered sex offenders, including the defendant.

Bomar explained that one of the requirements of the Sexual Offender Registration Act is for offenders to maintain systematic correspondence with the TBI. She said that the TBI initiated this correspondence after receiving two forms from an offender: a sexual offender registration form and a sexual offender release notification form. The release notification states that the requirements of the Sexual Offender Registry Program and penalties for failing to comply therewith were explained to the offender and that the offender understood that "if *any* information changes on [the offender's] registration form[,] even temporarily, for any reason longer than 10 days, [the offender] must notify TBI's Sexual Offender Registry." The form also lists the TBI address to which information changes must be sent. She said the TBI received the defendant's registration form on October 19, 1999, and his release notification on November 5, 1999, which he had signed and dated.

Bomar also explained that after receipt of such forms, the information coordinators enter the sex offender into the TBI system and commence mailing, by certified mail, a verification monitoring form to the newly registered sex offender quarterly, in March, June, September and December. After registered sex offenders receive a verification monitoring form, they are to confirm that their contact information is accurate, make any necessary changes, and mail it back to the TBI within ten days.

Bomar further testified that on May 31, 2002, the TBI changed the defendant's status to "unknown," which occurs after the post office returns two consecutive verification monitoring forms to the TBI unclaimed. Once this occurs, no more verification monitoring forms are sent until the TBI receives an updated address from the offender. The TBI did not receive an updated address from the defendant until November 24, 2003, nearly eighteen months later.

According to Bomar, the TBI sent the next quarterly verification monitoring form to the defendant's updated address in December 2003, but the post office returned it unclaimed on January 7, 2004. On January 21, 2004, the TBI received another updated address from the defendant, and the March 2004 verification monitoring form was sent to that address but again returned unclaimed on April 12, 2004. The defendant then submitted a new address on May 13, 2004. The TBI then stopped sending verification monitoring forms to the defendant because, on May 24, 2004, the TBI learned that he was incarcerated at the White County Jail.

At the conclusion of the bench trial, the trial court found that the defendant had been advised of his obligation to comply with the Sexual Offender Registration Act and to verify his information every ninety days. The court then determined that the evidence showed beyond a reasonable doubt that the defendant had violated the Act at least two times.

At the April 27, 2005, sentencing hearing, the defendant's probation officer, Jamie Reece, testified that the defendant pled guilty to simple possession on December 11, 1992, and to theft under $500 on August 20, 1993. Reece also confirmed the defendant's 1999 guilty plea to attempted aggravated sexual battery and informed the court that the defendant violated his probation on October 12, 2000, by testing positive for marijuana, and on September 10, 2003, for failing to comply with the instructions of his probation officer. Reece said the defendant again violated his probation on March 26, 2004, "for technical violations, including failure to comply with the sex offender registry and not reporting to the probation officer." Following this violation, the defendant's probation was revoked, and he was sentenced to one year in the White County Jail and his probation extended for two years. Reece further said that the defendant was released on medical furlough on January 3, 2005, and while on release, again tested positive for marijuana on March 7, 2005.

The defendant testified, attributing his failure of the March 7, 2005, drug test to the prescription drug, Protonix, rather than marijuana. He said he was released on medical furlough in order to have hip surgery but had not had the surgery because of complications with his medical insurance. On cross-examination, he admitted that he tested positive for marijuana in October 2000 and May 2004 because he had actually been smoking it.

At the conclusion of the hearing, the trial court sentenced the defendant to eleven months and twenty-nine days.

### ANALYSIS

### I. Whether Bomar was a Proper Authenticating Witness under Tennessee Rule of Evidence 803(6)

■ Relying on Tennessee Rule of Evidence 803(6), the defendant argues that the trial court erred by allowing Elaine Bomar to testify as a TBI records custodian. Specifically, he asserts that she was one of six persons who filed such records; that she was not solely responsible for the defendant's file and could not say that it included all relevant documents; and that she was not in charge of the sex offender records and did not have "knowledge of the method of preparing and preserving" the records.

■ Rule 803(6) of the Tennessee Rules of Evidence defines business records:

Records of Regularly Conducted Activity.—A memorandum, report, record, or data compilation, in any form, of acts, events, conditions, opinions, or diagnoses made at or near the time by or from information transmitted by a person with knowledge and a business duty to record or transmit if kept in the course of a regularly conducted business activity and if it was the regular practice of that business activity to make the memorandum, report, record, or data compilation, all as shown by the testimony of the custodian or other qualified witness or by certification that complies with Rule 902(11) or a statute permitting certification, unless the source of information or the method or circumstances of preparation indicate lack of trustworthiness. The term "business" as used in this paragraph includes business, institution, profession, occupation, and calling of every kind, whether or not conducted for profit.

We note that, apparently, in a pretrial hearing, the transcript of which is not included in the record on appeal, the court determined that Bomar was, as the State later described, "a records custodian for the Tennessee Bureau of Investigation." Since the appellate record does not include

619

the testimony from which the trial court made this finding, we must presume that the trial court ruled correctly on this issue. *State v. Miller*, 737 S.W.2d 556, 559 (Tenn.Crim.App.1987) (holding that because the record on appeal did not include presentence report and certified copies of defendant's prior convictions and parole classification, the appellate court "must conclusively presume" that trial court was correct in finding defendant to be a "persistent offender" and that his offense was "especially aggravated"). In any event, the claim is without merit, for reasons explained by Neil P. Cohen et al., *Tennessee Law of Evidence*, § 8.11[11] (5th ed.2005), in pertinent part:

Rule 803(6) specifically provides two ways of authenticating a business record. The first, representing the traditional method, is for the "custodian or other qualified witness" to testify in court about the foundational facts. Typically, that witness will be in charge of maintaining records of the particular business, but other employees or officers or appropriately informed witnesses could be used as well. The key is that the witness must have knowledge of the method of preparing and preserving the business records at issue.

*Id.* (footnotes omitted). Bomar's trial testimony clearly established both that she was one of the TBI employees in charge of maintaining the sex offender records and that she had knowledge of the manner in which they were prepared and preserved.

## II. Sufficiency of the Evidence

■ The defendant argues that the State failed to prove at the trial that the defendant in this matter was the same "Robert Leonard Flatt" who, in 1999, had pled guilty to attempted aggravated sexual battery and whose failure to comply with the sex offender registry process had led to the indictment which was the genesis of

this appeal. However, as this court explained in *State v. Cottrell*, 868 S.W.2d 673, 678 (Tenn.Crim.App.1992), name similarity "constitutes prima facie evidence of identity," the court noting that the name "Scottie Cottrell" appeared both in the indictment which was the basis for the appeal, as well as the previous judgment that was the basis for enhanced punishment. Likewise, in *State v. Woodson*, 705 S.W.2d 677 (Tenn.Crim.App.1985), this court explained that " '[a] majority of the authorities hold that the identity of name of the defendant and the person previously convicted is prima facie evidence of the identity of the person, and in the absence of rebutting evidence, supports a finding of such identity.' " *Id.* at 679 (quoting *Beeler v. State*, 206 Tenn. 160, 166, 332 S.W.2d 203, 206 (1959)).

In this matter, the defendant presented no proof at trial and, thus, failed to rebut the prima facie evidence of identity resulting from the fact that his name was identical to that of the person named in the indictment. Accordingly, we conclude that this claim is without merit.

## III. Denial of Motion for Acquittal

■ The third issue the defendant raises is whether his motion for acquittal was erroneously denied because no date was specified in the indictment and the crime, in the defendant's view, was not a continuing one. The defendant complains that "the trial court erred by failing to force the State to elect a day on which [the defendant] committed the crime of violation of the sex offender registry."

In *State v. Adams*, 24 S.W.3d 289 (Tenn. 2000), our supreme court explained that election of offenses is not required when the prohibited conduct is continuing:

In cases when the charged offense consists of a discrete act and proof is intro-

duced of a series of acts, the state will be required to make an election. In cases when the nature of the charged offense is meant to punish a continuing course of conduct, however, election of offenses is not required because the offense is, by definition, a single offense. *Id.* at 294.

The indictment in this matter consists of a single count, alleging that the defendant failed to comply with the Sexual Offender Registration and Monitoring Act:

> THE GRAND JURORS of White County, Tennessee, duly empanelled and sworn upon their oath present that ROBERT LEONARD FLATT, with one (1) year prior to the finding of this indictment, in White County, Tennessee and before the finding of this indictment did unlawfully and knowingly fail to timely disclose required information and/or to timely cause to be delivered the required registration/monitoring forms to the Tennessee Bureau of Investigation, pursuant to the Sexual Offender Registration and Monitoring Act, in violation of T.C.A. § 40–39–108 and against the peace and dignity of the State of Tennessee.

We will examine the defendant's claim that this Act requires the State to elect a certain day upon which the offense was committed.

The Sexual Offender Registration and Monitoring Act, codified in Tennessee Code Annotated sections 40–39–101 to –111, required that sexual offenders register with the TBI within ten days following release from incarceration. *See* Tenn.Code Ann. § 40–39–103 (repealed 2004). Section 40–39–108 outlined the violations and accompanying penalties for failure to comply, providing that a "[k]nowing falsification of a sexual offender registration/monitoring form or verification/monitoring form constitutes a Class A misdemeanor for the first offense, punishable by confinement in the county jail for not less than one hundred eighty (180) days." Tenn.Code Ann. § 40–39–108(a) (repealed 2004). According to the statute, "falsification" includes the "[k]nowing failure ... to timely deliver required registration/monitoring or verification/monitoring forms to the TBI." *Id.*

Relying on *Adams*, 24 S.W.3d at 295, the defendant argues that "[n]othing in the statutory elements of [failure to register as a sex offender] contemplates punishment of a continuing course of conduct." In *Adams*, the court held that aggravated child abuse through neglect was a continuing offense, and, thus, the State was not required to make an election even though the offense consists of separate acts. We conclude, as did the trial court in this matter, that failure to register as a sex offender is a continuing offense, as was explained in *Khalifa v. State*, 382 Md. 400, 855 A.2d 1175 (Md.2004), where the Maryland Court of Appeals set out a partial list of those crimes, including failure to register as a sex offender, which are considered to be "continuing":

> The concept of "continuing offense" has embraced such crimes as embezzlement, *State v. Thang*, 188 Minn. 224, 246 N.W. 891 (1933), bigamy, *Cox v. State*, 117 Ala. 103, 23 So. 806 (1898), nuisance, *State v. Dry Fork R. Co.*, 50 W.Va. 235, 40 S.E. 447 (1901), and the repeated failure to pay taxes, *United States v. Sullivan*, 255 F.3d 1256 (10th Cir.2001). Courts also have determined that "continuing offenses" include failing to register as a sex offender, *Arizona v. Helmer*, 203 Ariz. 309, 53 P.3d 1153, 1155 (2002), and being a deported alien found in the United States, *United States v. Ramirez–Valencia*, 202 F.3d 1106, 1110 (9th Cir.2000). We have held that the crime of failing to pay child support is a

continuing offense. *State v. James,* 203 Md. 113, 119, 100 A.2d 12, 14 (1953).

*Id.* at 1191.

We agree with the trial court that failing to register as a sex offender is a continuing offense. Thus, the defendant's claim to the contrary is without merit.

## IV. Sentencing

■ The defendant's final issue is whether the trial court imposed a proper sentence. The defendant argues two points: (1) that the sentence imposed by the trial court, the maximum for a Class A misdemeanor, is too harsh; and (2) that the trial court failed to "include any legally sufficient reason to impose a sentence of incarceration above the minimum sentence." The Sexual Offender Registration Act dictates that violation of the Act is a Class A misdemeanor and "punishable by confinement in the county jail for not less than one hundred eighty (180) days." Tenn.Code Ann. § 40–39–108(a) (repealed 2004). By setting a minimum time period that must be served in confinement, the statute in no way indicates that a longer sentence is improper: it sets the floor but does not comment on the ceiling. Moreover, the sentence imposed is permissible under Tennessee Code Annotated section 40–35–111(e)(1), which sets the maximum allowable sentence for a Class A misdemeanor at eleven months and twenty-nine days.

■ Next, the defendant argues that the trial court did not "include any legally sufficient reason to impose a sentence of incarceration above the minimum sentence." However, it has been established that when imposing a sentence for conviction of a misdemeanor, a trial court is not required to make findings of fact on the record in determining the percentage to be served in confinement. *State v. Troutman,* 979 S.W.2d 271, 274 (Tenn.1998). Rather, a trial court "need only consider the principles of sentencing and enhancement and mitigating factors in order to comply with the legislative mandates of the misdemeanor sentencing statute." *Id.* (interpreting Tenn.Code Ann. § 40–35–302(d)).

The record reflects that the trial court considered the principles of sentencing by holding a sentencing hearing, at which evidence of enhancement and mitigating factors was presented. Specifically, the defendant's probation officer testified about the defendant's prior criminal record, and the defendant himself took the stand, discussed his medical problems, and admitted that he had twice violated his probation in the past. The trial court's consideration of this testimony is reflected in the court's statement that "based on [the defendant's] record, he'd be justified in a sentence of 11 months and 29 days to serve." We conclude that the defendant's prior criminal history justifies imposition of the sentence imposed by the court.

## CONCLUSION

Based upon the foregoing authorities and reasoning, we affirm the judgment of the trial court.