IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 2, 2024

## STATE OF TENNESSEE v. TANDREA LAQUISE SANDERS

**Appeal from the Circuit Court for Montgomery County**
**No. 63CC1-2022-CR-1232     Adrienne Gilliam Fry, Judge**

_____

### No. M2023-01148-CCA-R3-CD

_____

The Defendant, Tandrea Laquise Sanders, pled guilty to assault and contributing to the delinquency of a minor.  After a sentencing hearing, the trial court imposed concurrent sentences of eleven months and twenty-nine days.  The sentences were suspended to probation after service of six months in custody.  On appeal, the Defendant argues that the trial court abused its discretion in ordering a sentence of split confinement and failed to properly fix a percentage of the sentence to be served before consideration of rehabilitative programs.  Upon our review, we respectfully affirm the trial court's judgments.

**Tenn. R. App. 3 Appeal as of Right;**
**Judgments of the Circuit Court Affirmed**

TOM GREENHOLTZ, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and KYLE A. HIXSON, JJ., joined.

Chase T. Smith, Clarksville, Tennessee, for the appellant, Tandrea Laquise Sanders.

Jonathan Skrmetti, Attorney General and Reporter; Katherine Orr, Assistant Attorney General;  Robert J. Nash, District Attorney General; and Jeffrey P. Watts, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTUAL BACKGROUND

On the afternoon of April 21, 2022, the Defendant arrived at Glenellen Elementary School to confront her son's teacher about a remark the teacher made to her child.  The school's principal spoke with the Defendant about the incident, telling the Defendant that

the teacher would be investigated.  The Defendant became upset with the principal and directed her son, a fourth grader, to go into the classroom and hit the teacher.  The child did not do so, but the Defendant soon after punched the principal, striking her in the face.  The Defendant then left the premises.

A Montgomery County grand jury charged the Defendant with assault and contributing to the delinquency of a minor.  On March 3, 2023, the Defendant pled guilty to both charges, reserving sentencing issues and the possibility of judicial diversion to the trial court.  The trial court held a sentencing hearing on July 7, 2023.

At the sentencing hearing, the principal testified that, as a result of being punched by the Defendant, she suffered a mild concussion, whiplash, and emotional trauma requiring anxiety medication.  She said that security footage of the incident was posted on social media, where it received comments from the public and caused the victim to be afraid while interacting with the parents of other students.  The principal further stated that the publicity "kind of clouds the reputation of the school."  After the principal's testimony, the Defendant apologized for her actions, but insisted that her son was "getting bullied and nothing was happening."

The State argued that the Defendant's request for judicial diversion should be denied and that she should serve a minimum of forty-eight hours of jail time with supervised probation for the remainder of her sentence.  The Defendant argued that the trial court should grant her judicial diversion or, alternatively, impose a sentence of full probation.

After a brief recess, the trial court denied the Defendant's request for judicial diversion and explained its sentencing considerations on the record.  In so doing, the court addressed the Defendant's amenability to correction.  The court credited the absence of a criminal history, but noted that the Defendant appeared to lack remorse in her unsworn statement.  It further found that because no evidence supported the factors relating to social history or physical or mental health, these factors had little weight.  Next, the court weighed heavily the circumstances of the offense, which included an assault at an elementary school in front of "several staff members, children, [and] other individuals."  Finally, the court gave great weight to the interests of the public and to the need to provide an effective deterrent, particularly because of the publicity surrounding the event.

The court then discussed possible mitigating and enhancement factors, reviewing each statutory factor individually.  It found that no mitigating factors applied.  However, the court found that enhancement factor (15), that the Defendant committed the offense on the grounds of an institute of learning while minors were present, applied to the case.

Considering all the factors, the court sentenced the Defendant to a term of eleven months and twenty-nine days for each count. Both sentences were suspended to probation, though the court ordered that the Defendant first serve six months in custody for the assault conviction. The judgments for each sentence, which were filed by the court clerk on July 13, 2023, ordered that the sentences would be served at 75% before the application of any rehabilitative credits.

The trial court initially ordered that the sentences be served consecutively. After the Defendant filed a motion to reconsider the sentences, the court ordered that they be served concurrently but declined to fully suspend them. The Defendant filed a timely notice of appeal on August 11, 2023, and the trial court permitted the Defendant to remain on bond pending this appeal.

## STANDARD OF APPELLATE REVIEW

Our supreme court has recognized that "the first question for a reviewing court on any issue is 'what is the appropriate standard of review?'" *State v. Enix*, 653 S.W.3d 692, 698 (Tenn. 2022). The Defendant appeals only the portion of the trial court's order imposing confinement for her assault conviction, arguing that the trial court should have instead imposed a sentence of full probation. This court has applied the standard of appellate review set forth in *State v. Bise*, 380 S.W.3d 682 (Tenn. 2012) to review misdemeanor sentences. *See, e.g.*, *State v. Shults*, No. E2023-00221-CCA-R3-CD, 2024 WL 335776, at *2 (Tenn. Crim. App. Jan. 30, 2024), *no perm. app. filed*.

Under the *Bise* standard, we review a trial court's sentencing determinations for an abuse of discretion, "granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." *Bise*, 380 S.W.3d at 707. As such, we will uphold a sentence "so long as it is within the appropriate range and the record demonstrates that the sentence is otherwise in compliance with the purposes and principles listed by statute." *Id.* at 709-10. This standard of review also applies to "questions related to probation or any other alternative sentence." *State v. Caudle*, 388 S.W.3d 273, 278-79 (Tenn. 2012).

In this case, the trial court imposed a within-range sentence for both Class A misdemeanor offenses. It also expressly considered the purposes and principles of sentencing, the common-law factors applicable to alternative sentencing determinations, and possible enhancement and mitigating factors. As such, we accord a presumption of reasonableness to the trial court's sentencing decision and review that decision for an abuse of discretion.

**ANALYSIS**

The Defendant argues that her split-confinement sentence is excessive and the jail term is longer than needed to achieve the purposes of punishment. *See* Tenn. Code Ann. § 40-35-103(4). She also contends that the judgment forms were completed before the sentencing hearing and that the trial court failed to consider the percentage of the sentence she must serve before being eligible for rehabilitative programs. The State responds that the trial court did not abuse its discretion in ordering a sentence of split confinement or fixing the service percentage at seventy-five percent. We agree with the State.

Trial courts have "great flexibility in fashioning a misdemeanor sentence." *State v. Webb*, 130 S.W.3d 799, 834 (Tenn. Crim. App. 2003). When a trial court imposes a sentence for a misdemeanor, the court shall impose "a specific number of months, days or hours" to be served by a defendant, and the court shall also "fix a percentage of the sentence that the defendant shall serve." Tenn. Code Ann. § 40-35-302 (b), (d). Unlike a felony case, no presumptive minimum sentence exists for a misdemeanor conviction. *State v. Cooper*, 335 S.W.3d 522, 524 (Tenn. 2011). Also, defendants convicted of a misdemeanor are not presumed to be eligible for alternative sentencing. *State v. Troutman*, 979 S.W.2d 271, 273 (Tenn. 1998). Instead, the defendant "has the burden of establishing that [she] is suitable for probation by demonstrating that probation will subserve the ends of justice and the best interest of both the public and the defendant." *State v. Smith*, No. M2022-00646-CCA-R3-CD, 2023 WL 3221092, at *6 (Tenn. Crim. App. May 3, 2023) (citing *State v. Carter*, 254 S.W.3d 335, 347 (Tenn. 2008) and internal quotation marks omitted), *no perm. app. filed*.

A. **ALTERNATIVE SENTENCE OF SPLIT-CONFINEMENT**

The Defendant first argues that the trial court abused its discretion by ordering a split confinement sentence involving six months to be served in custody. Our supreme court has recognized that "[t]he [Sentencing] Act requires a case-by-case approach to sentencing, and authorizes, indeed encourages, trial judges to be innovative in devising appropriate sentences." *Ray v. Madison County*, 536 S.W.3d 824, 833 (Tenn. 2017) (citation and internal quotation marks omitted). "Any sentence that does not involve complete confinement is an alternative sentence." *State v. Crabtree*, No. M2021-01154-CCA-R3-CD, 2023 WL 2133831, at *19 (Tenn. Crim. App. Feb. 21, 2023) (citation omitted), *no perm. app. filed*. Although "[t]here is no bright line rule for determining when probation should be granted," *State v. Bingham*, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995), *overruled on other grounds*, *State v. Hooper*, 29 S.W.3d 1, 10 (Tenn. 2000),

4

"individualized punishment is the essence of alternative sentencing," *State v. Dowdy*, 894 S.W.2d 301, 305 (Tenn. Crim. App. 1994).

To that end, a defendant's sentence must be based on "the nature of the offense and the totality of the circumstances in which it was committed, including the defendant's background." *State v. Ashby*, 823 S.W.2d 166, 168 (Tenn. 1991); *see also State v. Trotter*, 201 S.W.3d 651, 653 (Tenn. 2006). Nevertheless, pursuant to Tennessee Code Annotated section 40-35-103(1), sentences involving confinement may be ordered if they are based on one or more of the following considerations:

(A)     whether "[c]onfinement is necessary to protect society by restraining a defendant who has a long history of criminal conduct";

(B)     whether "[c]onfinement is necessary to avoid depreciating the seriousness of the offense[,] or confinement is particularly suited to provide an effective deterrence to others likely to commit similar offenses"; or

(C)     whether "[m]easures less restrictive than confinement have frequently or recently been applied unsuccessfully to the defendant."

Our supreme court has also recognized that "[t]he guidelines applicable in determining whether to impose probation are the same factors applicable in determining whether to impose judicial diversion." *State v. Trent*, 533 S.W.3d 282, 291 (Tenn. 2017) (citation and internal quotation marks omitted). To that end, "[w]hen considering probation, the trial court should consider the nature and circumstances of the offense, the defendant's criminal record, the defendant's background and social history, the defendant's present condition, including physical and mental condition, the deterrent effect on the defendant, and the best interests of the defendant and the public." *State v. Wilbourn*, No. W2022-01199-CCA-R3-CD, 2023 WL 4229352, at *4 (Tenn. Crim. App. June 28, 2023) (citation and internal quotation marks omitted), *no perm. app. filed*. And, of course, the trial court must consider the defendant's potential for rehabilitation in determining whether to impose an alternative sentence. *See* Tenn. Code Ann. § 40-35-103(5).

In this case, the trial court carefully reviewed the *Trent* factors as part of its decision on the Defendant's request for judicial diversion, and these factors were also relevant to its consideration of alternative sentencing. *Trent*, 533 S.W.3d at 291. Although the Defendant had no criminal record, the trial court found that the Defendant lacked remorse, which is relevant to the Defendant's amenability to rehabilitation. *See State v. Brown*, No. E2019-

5

00223-CCA-R3-CD, 2020 WL 3456737, at *19 (Tenn. Crim. App. June 25, 2020) ("Lack of remorse relates to Defendant's amenability to correction."), *perm. app. denied* (Tenn. Dec. 10, 2020).

The trial court also carefully considered the nature and circumstances of the offense. Referring to the Defendant's actions as being a "sucker punch," the court recognized that the assault occurred in a workplace and was without provocation. It noted that the Defendant's assault occurred "in front of what appeared to be several staff members, children, and other individuals." The court further observed that "in addition to assaulting the [p]rincipal, the [Defendant] also encouraged her fourth-grader to attack the teacher." Summarizing these concerns, the court stated that

> [i]nstitutions of learning should be bastions where children go to feel safe; to feel secure; to feel that they are not in any immediate threat by parents or other individuals. And teachers, and staff members, and others in those institutions should feel the same way.

The record supports the trial court's consideration of this factor.

Further, the trial court emphasized the need for the sentence to deter the Defendant and others from similar crimes. Our supreme court has recognized that a sentence of incarceration may be "particularly suited" for deterrence when "the defendant's crime was the result of intentional [or] knowing" conduct and when the case received "substantial publicity beyond that normally expected in the typical case." *Hooper*, 29 S.W.3d at 11, 12. Apart from the intentional nature of the assault, the court observed that "[t]his was a very, very publicized case" and that "social media certainly surrounded it." The record supports the trial court's consideration of this factor as well.

In our view, the trial court's decision was carefully considered. It weighed the applicable sentencing factors and imposed a sentence consistent with the purposes and principles of sentencing. We recognize that the custodial sentence is significant. However, we conclude that the trial court acted within its discretion to impose a split confinement sentence. The Defendant is not entitled to relief on this ground.

### B. PERCENTAGE OF SERVICE BEFORE CONSIDERATION OF REHABILITATIVE PROGRAMS

The Defendant next argues that the court failed to properly fix a percentage of the sentence to be served in custody before consideration of rehabilitative programs. She claims that the judgment forms must have been completed before the sentencing hearing

because the judgment for the fully suspended sentence in Count 2 contains a percentage of service. From this premise, she asserts that the court did not properly consider the percentage of service and that this percentage should therefore be set at zero percent.

Tennessee Code Annotated section 40-35-302(d) provides that "[i]n imposing a misdemeanor sentence, the court shall fix a percentage of the sentence that the defendant shall serve" before being eligible for "consideration for work release, furlough, trusty status and related rehabilitative programs." If the judgment does not express a percentage of service, "the percentage shall be considered zero percent (0%)," meaning that the defendant is immediately eligible for rehabilitative programs. *Id.*

In determining a percentage of service, "the court shall consider the purposes of this chapter, the principles of sentencing and the enhancement and mitigating factors set forth in this chapter and shall not impose such percentages arbitrarily." *Id.* Importantly, "there is no strict requirement that the trial court make findings on the record regarding the percentage of the defendant's sentence to be served in confinement[.]" *State v. Wilson*, No. M2012-02126-CCA-R3-CD, 2013 WL 3345908, at *6 (Tenn. Crim. App. June 28, 2013), *no perm. app. filed*. Instead, the supreme court has recognized that

> while the better practice is to make findings on the record when fixing a percentage of a defendant's sentence to be served in incarceration, a trial court need only consider the principles of sentencing and enhancement and mitigating factors in order to comply with the legislative mandates of the misdemeanor sentencing statute.

*Troutman*, 979 S.W.2d at 274 (footnote omitted); *State v. Flatt*, 227 S.W.3d 615, 621 (Tenn. Crim. App. 2006) ("[W]hen imposing a sentence for conviction of a misdemeanor, a trial court is not required to make findings of fact on the record in determining the percentage to be served in confinement.").

The plain language of section 40-35-302(d) requires the trial court to fix a percentage of the sentence that the defendant shall serve in all misdemeanor cases. *Ray*, 536 S.W.3d at 835 (recognizing that Tenn. Code Ann. § 40-35-302(d) "specifically authorizes, indeed obligates, trial courts" to fix the percentage of service in misdemeanor cases). Because "[s]ection 40-35-302 contemplates that trial courts will treat separately the issues of 'percentage' and probation," the trial court's duty to fix the percentage of service applies irrespective of whether the misdemeanor sentence is ultimately ordered to be served or suspended. *State v. Wyatt*, No. M1998-00470-CCA-R3-CD, 1999 WL 1266338, at *6 (Tenn. Crim. App. Dec. 29, 1999), *perm. app. denied* (Tenn. July 31, 2000). Indeed, even if the court fully suspends the sentence and places the defendant on probation, the percentage of service will later become relevant if the sentence is executed as a result

7

of a probation violation. *See State v. Colvin*, No. E2000-00701-CCA-R3-CD, 2001 WL 434875, at *3 (Tenn. Crim. App. Apr. 30, 2001) (recognizing that the trial court may fix a percentage of service on a fully suspended sentence and that the probationer will serve that percentage upon revocation of the suspended sentence), *no perm. app. filed*. Contrary to the Defendant's argument, it was entirely proper for the trial court to consider and fix a percentage of service even on a fully suspended misdemeanor sentence.

We see no evidence in the record that the judgment forms were somehow completed before the sentencing hearing, as the Defendant argues. Instead, the record shows that the trial court carefully considered the purposes and principles of sentencing on the record, and it reviewed each and every statutory enhancement and mitigating factor as part of its analysis. As such, we conclude that the trial court acted within its discretion to fix the percentage of the sentence that the Defendant must serve at seventy-five percent. The Defendant is not entitled to relief on this ground.

## CONCLUSION

In summary, we hold that the trial court acted within its discretion in imposing a split-confinement sentence and fixing the percentage to be served in confinement at seventy-five percent. Accordingly, we respectfully affirm the trial court's judgments.

_____
TOM GREENHOLTZ, JUDGE

8