# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs July 18, 2012

## STATE OF TENNESSEE v. JIM GEORGE CONASER a.k.a. JIMMY GEORGE CONASER

**Direct Appeal from the Criminal Court for Davidson County**
**No. 2010-D-3273     Cheryl A. Blackburn, Judge**

**No. M2011-02086-CCA-R3-CD - Filed August 21, 2013**

A Davidson County jury convicted the Defendant, Jim George Conaser a.k.a. Jimmy George Conaser, of separate counts of failing to timely register as a sexual offender and of failing to sign a Tennessee Bureau of Investigation (TBI) sexual offender registration form, both Class E felonies. The trial court imposed a consecutive terms of four years for these convictions. On appeal, the Defendant challenges the sufficiency of the evidence, the trial court's refusal to dismiss count two, the trial court's failure to merge the counts, the trial court's jury instructions, and the sentences imposed. Following our review of the record and the applicable authorities, the judgment and four-year sentence in count one are affirmed. However, upon review of count two, we conclude that the evidence is insufficient to support the Defendant's conviction and, therefore, reverse and dismiss his conviction and sentence as to that count.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court**
**Affirmed in Part; Reversed in Part**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which JOSEPH M. TIPTON, P.J., joined. NORMA MCGEE OGLE, J., filed a separate opinion concurring in part and dissenting in part.

Joshua L. Brand (at trial and on appeal) and Nathan Colburn (at trial), Nashville, Tennessee, for the appellant, Jim George Conaser a.k.a. Jimmy George Conaser.

Robert E. Cooper, Jr., Attorney General and Reporter; Nicholas W. Spangler, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Bret Gunn, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

In November 2010, a Davidson County grand jury returned a two-count indictment against the Defendant, charging him in count one with failing to timely register as a sex offender and in count two with failing to sign a TBI registration form. Specifically, count one of the indictment charged the Defendant as follows:

> [The Defendant,] who is a sexual offender as that term is defined by Tennessee Code Annotated §40-39-202, from August 1, 2007, to August 9, 2010, in Davidson County, Tennessee and before the finding of this indictment, unlawfully and knowingly did fail to register in person with a designated law enforcement agency as a sexual offender, required by Tennessee Code Annotated §§ 40-39-203 and 40-39-204, in violation of Tennessee Code Annotated §40-39-208, and against the peace and dignity of the State of Tennessee.

Count two alleged the following:

> [The Defendant,] who is a sexual offender as that term is defined by Tennessee Code Annotated §40-39-202, on or about the 10th day of August, 2010, in Davidson County, Tennessee and before the finding of this indictment, unlawfully and knowingly did fail to sign a Tennessee Bureau of Investigation (TBI) sexual offender registration form, required by Tennessee Code Annotated §§ 40-39-203 and 40-39-204, in violation of Tennessee Code Annotated §40-39-208, and against the peace and dignity of the State of Tennessee.

The Defendant's case proceeded to trial.

At trial, the State opened its case-in-chief with the following stipulation:

> The parties agree that the [D]efendant has a prior criminal conviction that qualifies him as a sexual offender. The parties also agree that this conviction required him to have registered in person with a designated law enforcement agency as a sexual offender by August the 1st, 2007, with an ongoing periodic registration requirement. The jury should consider these facts as having been proven.

Detective Maria Sexton testified that she was assigned to the Sex Crimes Unit of the Metropolitan Nashville Police Department ("Metro") and that she worked with the sexual offender registry. On July 29, 2010, Detective Sexton obtained a warrant for the Defendant's arrest based on his failure to register as a sexual offender. Detective Sexton said she could find no record of the Defendant's having ever registered as a sexual offender with the state or Davidson County. The Defendant was also supposed to "report" periodically. She explained that sexual offenders in Davidson County were required to report in person at Metro.

On cross-examination, Detective Sexton testified that before filing the registration violation, she had never communicated with the Defendant and that she did not know if the TBI had ever notified him of the registration requirement. Detective Sexton said that individuals could register when incarcerated and that the facility then forwarded the registration to her office. When she received the information, she forwarded it to the TBI, which maintained the sexual offender registration database.

Metro Officer Robert Shelton testified that on August 9, 2010, he arrested the Defendant for a violation of the sexual offender registry. Officer Shelton said he had known the Defendant for about eight months and had seen him in Davidson County on a weekly basis. At the time of the arrest, Officer Shelton asked the Defendant where he lived, and the Defendant replied that he was homeless. When Officer Shelton informed the Defendant of the reason for his arrest, the Defendant was upset and said that "it was bulls--t, he ain't no f--got, it was bulls--t." The Defendant also told Officer Shelton that he hated him. Officer Shelton said the Defendant did not "seem surprised that there was a sexual offender registry requirement on him." Officer Shelton did not review any of the requirements of the sexual offender registry with the Defendant at the time of his arrest. Officer Shelton noted that the Defendant appeared intoxicated. After the Defendant's arrest, Officer Shelton took him to jail where he was booked on multiple warrants.

Davidson County Sheriff's Deputy Keith Payne testified that he was a pretrial services screener whose job was to interview "certain arrestees to determine if they can be released from jail without having to pay a bond." He said that as part of his job, he also came into contact with violators of the sexual offender registry. Deputy Payne explained that when the Defendant was booked into the jail, the Defendant's name was searched in the National Crime Information Center (NCIC) database to determine his status as a sexual offender. The database reflected that the Defendant was a sexual offender, so Deputy Payne spoke with the Defendant on August 10, 2010, and explained that he was required to provide information and sign a sexual offender registration form. The Defendant refused to answer Deputy Payne's questions or sign the form.

3

On cross-examination, Deputy Payne acknowledged that his duties included "signing people up for the sex offender registration." Deputy Payne also acknowledged that he tried to register the Defendant but that the Defendant refused to give him any information or sign any paperwork. Deputy Payne warned the Defendant that if he refused to register, "then he would have a felony warrant put out for his arrest." However, the Defendant still refused to cooperate and said that "it wasn't him." Deputy Payne terminated the interview. He said the Defendant was not released and remained in the custody of the sheriff's department.

The forty-nine-year-old Defendant testified that in 2004, he was incarcerated for approximately five or six months. He said that on one occasion, he was sent "to the hole" and that someone, possibly the assistant warden, had him sign a paper. The Defendant said that he did not read the document but that "it was stated it was a sex offender registry [form]." Although the Defendant's hands were cuffed behind his back, he signed the paper. On direct examination, the following colloquy occurred:

> [Defense counsel:] But it was your understanding that you were signing a sex offender registration form?
>
> [The Defendant:] Right.
>
> [Defense counsel:] So now if you had signed a form, then do you have any reason to think you had to sign up again?
>
> [The Defendant:] I don't know. I just got out of the hole.
>
> [Defense counsel:] I mean, in the subsequent years. You thought you were on the registry, right?
>
> [The Defendant:] Yeah.
>
> [Defense counsel:] Okay. And if you're on the registry, you wouldn't think you had to sign up?
>
> [The Defendant:] I reckon not.

The Defendant stated that he had never received a letter about the registry and that he had never spoken with anyone about the registry.

The Defendant testified that he did not remember much about his 2010 arrest for a sexual offender registration violation because he was intoxicated at the time. When asked

4

why he did not sign the form for Deputy Payne, the Defendant responded, "I don't know." The Defendant acknowledged that although he had lived in Davidson County since August 2007, he had never "showed up" at Metro and "signed up for the registry[.]"

At the conclusion of the trial, the jury found the Defendant guilty as charged in count one, failing to register timely as a sexual offender, and count two, failing to sign a TBI sexual offender registration form, Class E felonies. The trial court sentenced the Defendant as a Range II, multiple offender to four years for each offense and ordered that he serve the sentences consecutively for a total effective sentence of eight years in the Department of Correction. On appeal, the Defendant challenges the sufficiency of the evidence, the trial court's refusal to dismiss count two, the trial court's failure to merge the counts, the trial court's jury instructions, and the sentences imposed.

ANALYSIS

*I. The Act*

A defendant's obligations as a convicted sexual offender are listed in Tennessee Code Annotated sections 40-39-201 to -215, otherwise known as the "Tennessee Sexual Offender and Violent Sexual Offender Registration, Verification and Tracking Act of 2004." The Act "is a comprehensive statute requiring persons convicted of certain offenses to register with the TBI and to have their names, addresses and other information maintained in a central offender registry." Stephen Strain v. Tennessee Bureau of Investigation, No. M2007-01621-COA-R3-CV, 2009 WL 137210 (Tenn. Ct. App. Jan. 20, 2009); see Tenn. Code Ann. § 40-39-212. The legislative findings and declarations in support of the Act's registration requirements are found at Tennessee Code Annotated section 40-39-201(b) and include the "compelling and necessary public interest" in making information regarding sexual offenders available to the public. The Act seeks to "balanc[e] the sexual offender's and violent sexual offender's due process and other rights against the interests of public security . . . ." Tenn. Code Ann. § 40-39-201(b)(4).

Violations of the Act include, but are not limited to, the following:

(1) Failure of an offender to timely register or report;
(2) Falsification of a TBI registration form;
(3) Failure to timely disclose required information to the designated law enforcement agency;
(4) Failure to sign a TBI registration form;
(5) Failure to pay the annual administrative costs, if financially able;
(6) Failure to timely disclose status as a sexual offender or violent sexual offender to the designated law enforcement agency upon reincarceration;

5

(7) Failure to timely report to the designated law enforcement agency upon release after reincarceration;

(8) Failure to timely report to the designated law enforcement agency following reentry in this state after deportation; and

(9) Failure to timely report to the offender's designated law enforcement agency when the offender moves to another state.

Tenn. Code Ann. § 40-39-208(a)(1). A "knowing" violation of the Act is a Class E felony. See Tenn. Code Ann. § 40-39-208(a), (b). Generally, a person "acts knowingly with respect to the conduct or to circumstances surrounding the conduct when the person is aware of the nature of the conduct or that the circumstances exist." Tenn. Code Ann. § 39-11-302(b).

Tennessee Code Annotated section 40-39-203 describes when, where, and how offenders register. In order for an offender to register, TBI registration forms must contain certain information about the offender and be signed by the registrant. Tenn. Code Ann. § 40-39-203(i). "The offender's signature on the TBI registration form creates the presumption that the offender has knowledge of the registration, verification and tracking requirements of this part." Tenn. Code Ann. § 40-39-203(l). Tennessee Code Annotated section 40-39-204 governs an offender's continued obligations to report to the governing registration agency to update and verify information or the registration form.

*II. Sufficiency of the Evidence/Dismissal of Count Two/Merger*

The Defendant challenges the sufficiency of the evidence supporting his convictions. An appellate court's standard of review when a defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). This court does not reweigh the evidence; rather, it presumes that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the State. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions regarding witness credibility, conflicts in testimony, and the weight and value to be given to evidence were resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).

A guilty verdict "removes the presumption of innocence and replaces it with a presumption of guilt, and [on appeal] the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Id.; State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). "This [standard] applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of [both] direct and circumstantial evidence." State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). The standard of

proof is the same, whether the evidence is direct or circumstantial. State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011). Likewise, appellate review of the convicting evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'" Id. (quoting State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)). The duty of this court "on appeal of a conviction is not to contemplate all plausible inferences in the [d]efendant's favor, but to draw all reasonable inferences from the evidence in favor of the State." State v. Sisk, 343 S.W.3d 60, 67 (Tenn. 2011).

### A. Count One

Regarding count one, that he failed to register timely as a sexual offender, the Defendant argues that the State failed to establish sufficiently that he acted "knowingly." He contends that although his statement that he thought he had previously signed a sexual offender registration form indicates that he was aware of registration requirements, the statement also indicates that he thought he had already registered. He also contends that this "factual mistake" shows he did not act "knowingly." In the alternative, the Defendant argues that in the event the jury discredited his statement, the State submitted no evidence that he "was aware of the nature of his conduct or the existence of such registration circumstances."

The indictment in count one charged the underlying actions as occurring from August 1, 2007, to August 9, 2010. At trial, the parties stipulated that the Defendant had been convicted of an offense that required him to register as a sexual offender by August 1, 2007. Det. Sexton testified that there was no record of the Defendant's having ever registered as a sexual offender with the state or Davidson County. Officer Shelton testified that he had known the Defendant for approximately eight months and that he had seen the Defendant in Davidson County on a weekly basis. Officer Shelton stated that when the Defendant was arrested for a sexual offender registration violation, the Defendant did not seem surprised. The Defendant acknowledged that at one point prior to his 2007 release, he was sent "to the hole," and while there, someone had him sign a paper, stating to him that it "was a sex offender registry [form]." The Defendant also acknowledged that following his release, he never "showed up" at Metro and "signed up for the registry[.]"

Our case law establishes that a jury may accept parts of a defendant's statements as true while rejecting other parts as false. See State v. Gilbert, 612 S.W.2d 188, 190 (Tenn. Crim. App. 1980); Batey v. State, 527 S.W.2d 148, 150 (Tenn. Crim. App. 1975); State v. Crystal Miranda Kirby, No. E2008-01862-CCA-R3-CD, 2010 WL 1854137, at *11 (Tenn. Crim. App. May 7, 2010). The jury was entitled to believe from the Defendant's statement that he was aware of the sexual offender registry and its requirements and was free to reject his assertion that he thought he had satisfied his duty to register. Moreover, Officer Shelton testified that the Defendant did not seem surprised by his arrest for failing to register as a sexual offender. In denying the Defendant's motion for judgment of acquittal, the trial court

7

noted that the Defendant's comments to Officer Shelton indicated that he was aware of the registration requirement and that "he considered it BS." Therefore, the court found that the proof demonstrated the Defendant acted knowingly. We agree and conclude that the proof sufficiently established the Defendant's guilt on count one.

*B. Count Two*

Regarding count two, that he failed to sign a TBI sexual offender registration form on August 10, 2010, the Defendant argues that he was not required to sign the form because he was being reincarcerated and was in the custody of the sheriff's department, which tolled the registration requirement pursuant to Tennessee Code Annotated section 40-39-204(e). The State responds that the tolling provision did not apply in this case because Tennessee Code Annotated section 40-39-203(b)(1)(B) "clearly permits the State to require sex offenders to sign TBI registration forms during their reincarceration." The State contends that "any apparent conflict between these two statutes is resolved by interpreting the later statute as a narrow and limited exception to the former."

Resolving this argument involves statutory construction. "The role of courts in construing statutes is to determine legislative intent and to effectuate legislative purpose." Lind v. Beaman Dodge, Inc., 356 S.W.3d 889, 903 (Tenn. 2011). When statutory language is clear and unambiguous, we look to its plain meaning and ordinary use to ascertain legislative intent." State v. Michael Shane Springer, -- S.W.3d --, No. W2010-02153-SC-R11-CD, 2013 WL 3156353, at *16 (Tenn. June 24, 2013). Our goal is to "ascertain and give effect to legislative intent without broadening the statute beyond its intended scope." Carter v. Bell, 279 S.W.3d 560, 564 (Tenn. 2009). "When statutes conflict, either in language or application, courts should construe each statute reasonably, in a manner that avoids conflict and facilitates the harmonious operation of the law." Lind, 356 S.W.3d at 903. Moreover, "[w]here two statutes are capable of coexistence, it is this Court's duty, absent clearly expressed intention to the contrary, to regard each statute as effective." Id. Horton v. Carroll County, 968 S.W.2d 841, 844 (Tenn. Ct. App. 1997). Issues of statutory construction are reviewed de novo without any presumption of correctness. See Carter v. Bell, 279 S.W.3d 560, 564 (Tenn. 2009).

Turning to the provisions at issue, Tennessee Code Annotated section 40-39-203 is titled "Offender registration — Registration forms — Contents" and describes when, where, and how offenders register. Specifically, section -203(b)(1) states that sexual offenders must register prior to their release from incarceration, providing as follows:

> An offender who is incarcerated in this state in a local, state or federal jail or a private penal institution shall, within forty-eight (48) hours prior to the offender's release, register or report in person, completing and signing a TBI

8

registration form, under penalty of perjury, pursuant to § 39-16-702(b)(3), as follows:

> (A) If incarcerated in a state, federal or private penal facility, with the warden or the warden's designee; or
> (B) If incarcerated in a local jail, with the sheriff or the sheriff's designee.

Tennessee Code Annotated section 40-39-204 is titled "Entering required data on SOR for verification, identification, and enforcement — Reporting to update information or registration form — Administrative costs — TBI as central repository — Tolling of registration requirements — Exemptions." This section governs an offender's continued obligations to report to the governing registration agency to update and verify information or the registration form. Relevant here, Tennessee Code Annotated section 40-39-204(e) provides,

> If a person required to register under this part is reincarcerated for another offense or as the result of having violated the terms of probation, parole, conditional discharge or any other form of alternative sentencing, the offender shall immediately report the offender's status as a sexual offender or violent sexual offender to the facility where the offender is incarcerated or detained and notify the offender's appropriate registering agency, if different, that the offender is currently being detained or incarcerated. Registration, verification and tracking requirements for such persons are tolled during the subsequent incarceration. Within forty-eight (48) hours of the release from any subsequent reincarcerations, the offender shall register with the appropriate designated law enforcement agency.

Section -204(e) states that registration for sexual offenders is tolled during periods of reincarceration. "Register" is defined as "the initial registration of an offender, or the re-registration of an offender after deletion or termination from the [TBI's centralized record system of offender registration, verification and tracking information.]" Tenn. Code Ann. § 40-39-202(13).

That said, if we accept the Defendant's argument, then Tennessee Code Annotated section 40-39-204(e) allows sexual offenders who have refused to register to continue to avoid registration prior to being released from their reincarceration. We do not believe this to be the case. As noted herein, section -203 deals with the registration requirements for sexual offenders, describing how, where, and when one registers, while section -204 governs an offender's continued obligation to report and update and verify registration information,

9

once registered. See also Tenn. Code Ann. § 40-39-208(a)(7) (making it a violation of the act to fail "to timely report to the designated law enforcement agency upon release after reincarceration"). Moreover, the legislative intent of the Tennessee Sexual Offender and Violent Sexual Offender Registration, Verification and Tracking Act of 2004 convinces us that the Defendant's argument is without merit. See Tenn. Code Ann. § 40-39-201(b)(1) (stating that "protection of the public from these [sexual] offenders if of paramount public interest"); Tenn. Code Ann. § 40-39-201(b)(2) (stating that "[i]t is a compelling and necessary public interest that the public have information concerning persons convicted of sexual offenses collected pursuant to this part, to allow members of the public to adequately protect themselves and their children from these persons"). Therefore, we believe that the statutes are in harmony when the reincarcerated sexual offender relying on tolling under Tennessee Code Annotated section 40-39-204(e) has previously registered as required by Tennessee Code Annotated section 40-39-203(b)(1) and that the Defendant's claim that he was not required to register pursuant to the tolling statute of section -204(e) must fail.

However, this does not end our inquiry into the sufficiency of the evidence supporting the Defendant's conviction in count two, that he knowingly refused to sign the TBI registration form on August 10, 2010, as alleged in the indictment. In a related argument, the Defendant contends that the trial court erred by failing to grant his pretrial motion to dismiss count two because his failure to sign the registration was not a crime during the period of subsequent reincarceration. Although the Defendant again cites to the tolling provision of section -204(e), he then cites to section -203(b)(1) and (b)(2) and argues that these statues "do not specifically require any action of an offender upon initial incarceration[,]" but instead create "registration obligations upon release from a penal facility." The State, in addressing the Defendant's argument for merger of the two counts, submits that the Defendant's arrest created a break in his continuing course of conduct and, therefore, that his subsequent refusal to sign the TBI form constituted a new offense.

First, we address the issue of merger. The double jeopardy clauses of the United States and Tennessee Constitutions protect an accused from (1) a second prosecution following an acquittal; (2) a second prosecution following conviction; and (3) multiple punishments for the same offense. See State v. Watkins, 362 S.W.3d 530, 541 (Tenn. 2012). The instant case concerns a "unit-of-prosecution" claim, which arises "when defendants who have been convicted of multiple violations of the same statute assert that the multiple convictions are for the 'same offense.'" Id. at 543 (emphasis omitted). To address a unit-of-prosecution claim, "courts must determine what the legislature intended to be a single unit of conduct for purposes of a single conviction and punishment." Id. (internal quotations and citation omitted). "Courts apply the 'rule of lenity' when resolving unit-of-prosecution claims, meaning that any ambiguity in defining the unit of conduct for prosecution is

10

resolved against the conclusion that the legislature intended to authorize multiple units of prosecution." Id.

Failure to comply with the sexual offender registration requirements is a continuing offense. Tenn. Code Ann. § 40-30-208(f); State v. Flatt, 227 S.W.3d 615, 620-21 (Tenn. Crim. App. 2006). In State v. Vigil, 65 S.W.3d 26, 36 (Tenn. Crim. App. 2001), the defendant appealed his two convictions for stalking, another continuing offense. Vigil, 65 S.W.3d at 28, 35. At trial, the evidence established that on January 11, 1996, the defendant's estranged girlfriend obtained an order of protection against him. Id. at 29. Subsequently, the defendant began following and harrassing the victim, which resulted in her obtaining a second order of protection against him on January 31, 1997. Id. On February 18, 1997, the defendant harrassed the victim in a single incident that occurred on the East Tennessee State Campus. Id. A jury convicted the defendant of stalking the victim from February 1996 to January 1997 and of stalking her on February 18, 1997. Id. at 32. On appeal to this court, the defendant argued that the evidence was insufficient to support the latter conviction because the February 18th incident did not establish repeated conduct. Id. at 34. This court agreed with the defendant, stating that "there is no indication that an event occurred before the February 18, 1997 incident to break the continuous course of conduct that constituted the stalking offense . . . which covered the events from February 1996 to January 1997. Id. at 35. However, this court went on to explain that some events, such as the defendant's being charged with stalking, "concludes the continuous course of conduct underlying that charge and that subsequent actions relate to a new series of conduct." Id. at 36. In making that determination, this court relied on State v. Jones, 678 So. 2d 1336, 1338 (Fla. Dist. Ct. App. 1996), in which the appellate court held that the defendant's arrest for stalking and subsequent actions "began a separate and distinct factual event." Id. This court also relied on Peckinpaugh v. State, 743 N.E.2d 1238, 1241 (Ind. Ct. App. 2001), in which the appellate court upheld the defendant's two convictions for stalking, concluding that his actions after he had been charged constituted a distinct and separate series of actions. Id.

Although the continuing offense at issue in Vigil was stalking, we see no reason why this court's rationale in Vigil should not apply to violations of the sexual offender registry. See also State v. Ehmke, 752 N.W.2d 117, 122 (Minn. Ct. App. 2008) (holding that defendant's "repeated failures to register [as a sex offender] constitute separate and distinct offenses"). Therefore, we must now determine if a break in the events justified the Defendant's being charged with count two.

On August 9, 2010, Officer Shelton arrested the Defendant for a violation of the sexual offender registry. The next day, Deputy Payne tried to register the Defendant. However, the Defendant refused to give the officer any information for registration or sign

the TBI registration form. In our view, the Defendant's arrest for the actions underlying count one, which was alleged in the indictment as occurring from August 1, 2007, to August 9, 2010, ended that course of conduct. We agree with the State that the Defendant's arrest was sufficient to create a break in his conduct; however, the relevant sufficiency question remains, did the Defendant commit an entirely new offense on August 10, 2010, by refusing to sign the TBI form.[1]

The trial court instructed the jury that in order for it to find the Defendant guilty in count two, the State had to prove beyond a reasonable doubt that (1) the Defendant had a conviction for an offense which qualified him as a sexual offender; (2) the Defendant was required to register in person with a designated law enforcement agency by August 1, 2007, with an ongoing periodic registration requirement; and (3) the Defendant knowingly failed to sign a TBI sexual offender registration form. For emphasis, we state section -203(b), in effect at the time the Defendant was alleged to have committed count two, here in its entirety[2]:

---

[1] I take no exception with the dissent's perspective that "a sexual offender initially released from confinement, and an offender who was initially released from confinement without registering and signing a TBI registration form should be required to do so on demand . . . ." However, the issue is whether the Defendant's actions in this case constitute a separate and distinct offense, and I believe that the Defendant's reincaraceration for failing to timely register as a sex offender is important to deciding that issue because it provides the statutory framework for the Defendant's obligations. As noted throughout this opinion, Tennessee Code Annotated section 40-39-203(b)(1) concerns the registration requirements for an incarcerated offender prior to his release.

As noted throughout this opinion, Tennessee Code Annotated section 40-39-203(b)(1) concerns the registration requirements for an incarcerated offender prior to release.

[2] We note that the legislature, in 2011, apparently recognized some conflict, amending Tennessee Code Annotated section 40-39-203(b) to add section (b)(3), which states,

> Notwithstanding subdivisions (b)(1) and (2), an offender who is incarcerated in this state in a local, state or federal jail or a private penal institution and who has not registered pursuant to § 40-39-212(a) or any other law shall, by August 1, 2011, be required to report in person, register, complete and sign a TBI registration form, under penalty of perjury, pursuant to § 39-16-702(b)(3), as follows:
>
> (A) If incarcerated in a state, federal or private penal facility, with the warden or the warden's designee; or
> (B) If incarcerated in a local jail, with the sheriff or the sheriff's designee.

12

(1) An offender who is incarcerated in this state in a local, state or federal jail or a private penal institution shall, <u>within forty-eight (48) hours prior to the offender's release</u>, register or report in person, completing and signing a TBI registration form, under penalty of perjury, pursuant to § 39-16-702(b)(3), as follows:

(A) If incarcerated in a state, federal or private penal facility, with the warden or the warden's designee; or

(B) If incarcerated in a local jail, with the sheriff or the sheriff's designee.

(2) After registering or reporting with the incarcerating facility as provided in subdivision (b)(1), an offender who is incarcerated in this state in a local, state or federal jail or a private penal institution shall, within forty-eight (48) hours after the offender's release from the incarcerating institution, report in person to the offender's registering agency, unless the place of incarceration is also the person's registering agency.

(Emphasis added). The jury charge in this case was incomplete as it did not reference that the requirement to sign and complete a TBI form is not triggered until forty-eight hours prior to a defendant's release from incarceration.

Looking at the statutory elements of the crime for which the Defendant stands convicted, it does not appear that there was ever any evidence presented at trial that the Defendant was released following his incarceration on August 9, 2010. From our review of the judgment form and the pretrial jail credits noted therein, it is clear that the Defendant has remained incarcerated following his arrest. Because the Defendant has never been released, the obligation to complete and sign a TBI registration form <u>within forty-eight hours prior to his release</u> never arose. To conclude otherwise renders this provision of (b)(1) meaningless. We cite to another often used principle of statutory construction that we are charged with interpreting statutes "'as a whole, giving effect to each word and making every effort not to interpret a provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous.'" <u>Culbreath v. First Tenn. Bank Nat'l Ass'n</u>, 44 S.W.3d 518, 524 (Tenn. 2001) (quoting <u>Cafarelli v. Yancy</u>, 226 F.3d 492, 499 (6th Cir. 2000)); <u>see</u> <u>Leab v. S & H Mining Co.</u>, 76 S.W.3d 344, 350 n.3 (Tenn. 2002) ("[W]e must avoid constructions which would render portions of the statute meaningless or superfluous.").

_____

However, insertion of the date "by August 1, 2011," makes the meaning of this addition somewhat unclear.

13

Because the Defendant's actions on August 10, 2010, were not criminalized at that time, he is not guilty of an offense. The Defendant's conviction in count two is therefore reversed and dismissed.

### III. Jury Instructions

The Defendant contends that the trial court committed reversible error "by charging the jury with conflicting portions of the law regarding count two of the indictment and requiring counsel to argue which statutory portion applies."[3] He claims that the trial court's instruction was contradictory, confusing, and inaccurate. The State claims that the trial court properly instructed the jury. We conclude that the trial court erred in giving the instructions.

A defendant has a "constitutional right to a correct and complete charge of the law." State v. Teel, 793 S.W.2d 236, 249 (Tenn. 1990). Accordingly, trial courts "should give a requested instruction if it is supported by the evidence, embodies a party's theory, and is a correct statement of the law." State v. Phipps, 883 S.W.2d 138, 150 n.20 (Tenn. Crim. App.1994). Moreover, we have previously noted that "[w]e must review the entire [jury] charge and only invalidate it if, when read as a whole, it fails to fairly submit the legal issues or misleads the jury as to the applicable law." State v. Forbes, 918 S.W.2d 431, 447 (Tenn. Crim. App. 1995). A charge resulting in prejudicial error is one that fails to fairly submit the legal issues to the jury or misleads the jury about the applicable law. State v. Hodges, 944 S.W.2d 346, 352 (Tenn. 1997). To save a constitutional error in a jury instruction from reversal, the error must be harmless beyond a reasonable doubt. See State v. Faulkner, 154 S.W.3d 48, 59-60 (Tenn. 2005).

Again, regarding count two, the trial court instructed the jury that in order for it to find the Defendant guilty, the State had to prove beyond a reasonable doubt that (1) the Defendant had a conviction for an offense which qualified him as a sexual offender; (2) the Defendant was required to register in person with a designated law enforcement agency by August 1, 2007, with an ongoing periodic registration requirement; and (3) the Defendant knowingly failed to sign a TBI sexual offender registration form. The trial court then instructed the jury on what the court referred to as "relevant statutory provisions for count two":

> TCA § 40-39-203 (a)(1) Within forty-eight (48) hours of establishing or changing a primary or secondary residence,

---

[3] The Defendant does not challenge on appeal the omission of the forty-eight-hour requirement from the jury instructions. However, we again feel constrained to note that the jury charge in count two was incomplete as it did not contain a statutory element of the offense, i.e, that the requirement to sign and complete a TBI form is not triggered until forty-eight hours prior to a defendant's release from incarceration.

establishing a physical presence at a particular location, the offender shall register or report in person as required. Likewise, within forty-eight (48) hours of release on any alternative to incarceration this offender shall register or report in person.

TCA § 40-39-204 (e)  If a person required to register is reincarcerated for another offense, the offender shall immediately report the offender's status as a sexual offender to the facility where the offender is incarcerated or detained and notify the offender's appropriate registering agency that the offender is currently being detained or incarcerated. Registration verification and tracking requirements are tolled during the subsequent incarceration. Within forty-eight (48) hours of the release from any subsequent reincarceration, the offender shall register with the appropriate designated law enforcement agency.

During closing arguments, defense counsel argued that the Defendant was not guilty of failing to sign the TBI form because, pursuant to Tennessee Code Annotated section 40-39-204(e), he was not required to comply with the registration requirements while he was in jail. During its rebuttal argument, the State responded that the Defendant was required to register during his confinement in jail because Tennessee Code Annotated section 40-39-203(a)(1) required that a sexual offender register anytime the offender established a presence at a particular location, including jail.

On appeal, the Defendant contends that the trial court's including Tennessee Code Annotated sections 40-39-203(a)(1) and -204(e) in the jury charge amounts to reversible error. His challenge to the jury instructions is two-fold. First, he contends that the provisions conflict because the State's argument that a sexual offender's presence at a particular location still requires an initial registration is "in direct contradiction to the explicit exemption for registration requirements described in Tenn[essee] Code Ann[otated] § 40-39-204(e)." However, we have already determined that the tolling provision in Tennessee Code Annotated section 40-39-204(e) does not apply in cases such as this one where the sexual offender failed to register and is reincarcerated. Therefore, the trial court should not have instructed the jury on Tennessee Code Annotated section 40-39-204(e).

Second, the Defendant contends that Tennessee Code Annotated section 40-39-203(a)(1) was inapplicable to the instant case. He notes that subsection (a) concerns the requirement of registration after establishing or changing a residence, moving to another state, being released on probation or parole, and materially changing employment or vocation

15

status. He claims that all of the foregoing situations "describe locational changes that occur in the free world," not during incarceration. He also claims that "establishing a physical presence at a particular location" as mentioned in Tennessee Code Annotated section 40-39-203(a)(1) was not meant to apply to an incarcerated person but was instead "meant to fill in the cracks for an offender who may technically not maintain a residence. A homeless individual is probably the most common example."[4] To support this contention, the Defendant notes that the next subsection, Tennessee Code Annotated section 40-39-203(b)(1), concerns the registration requirements for an incarcerated offender prior to the offender's release. The State argues that the instruction regarding Tennessee Code Annotated section 40-39-203(a)(1) "was supported by the evidence, embodied the State's theories of guilt, and represented a correct statement of the law."

Tennessee Code Annotated section 40-39-203(a)(1) requires that a person register or report as a sexual offender after "establishing a physical presence at a particular location," which the State interprets to include being incarcerated. We disagree with the State. Under the generally accepted rules of statutory construction, a special statute, or a special provision of a particular statute, will prevail over a general provision in another statute or a general provision in the same statute." Keogh v. State, 356 S.W.3d 366, 371 (Tenn. 2011); see also State v. Davis, 173 S.W.3d 411, 415 (Tenn. 2005). Tennessee Code Annotated section 40-39-203(b)(1), which we discussed previously, and section -204(e) specifically address registration and reporting for incarcerated offenders. Tennessee Code Annotated section 40-39-203(a)(1) does not. Therefore, we agree with the Defendant that Tennessee Code Annotated section 40-39-203(a)(1) does not apply to incarcerated sexual offenders and that the trial court should not have instructed it to the jury.

*IV. Sentencing*

Finally, the Defendant contends that the trial court erred by imposing a sentence of four years for each offense and by ordering that he serve the sentences consecutively. Before a trial court imposes a sentence upon a convicted criminal defendant, it must consider: (a) the evidence adduced at the trial and the sentencing hearing; (b) the presentence report; (c) the principles of sentencing and arguments as to sentencing alternatives; (d) the nature and characteristics of the criminal conduct involved; (e) evidence and information offered by the parties on the enhancement and mitigating factors set forth in Tennessee Code Annotated sections 40-35-113 and 40-35-114; (f) any statistical information provided by the Administrative Office of the Courts as to Tennessee sentencing practices for similar offenses; and (g) any statement the defendant wishes to make in the defendant's own behalf about sentencing. Tenn. Code Ann. § 40-35-210(b). To facilitate appellate review, "it is critical that trial courts adhere to the statutory requirement set forth in Tennessee Code Annotated

---

[4]The proof at trial established that the Defendant was homeless at the time of his arrest.

section 40-35-210(e)" and articulate in the record its reasons for imposing the specific sentence. See State v. Bise, 380 S.W.3d 682, 705 n.41 (Tenn. 2012).

*A. Length*

The Defendant challenges the imposition of the maximum sentence on each count. The 2005 amendments to the Sentencing Act "served to increase the discretionary authority of trial courts in sentencing. Bise, 380 S.W.3d at 708.[5] Currently, upon a challenge to the length of the sentence imposed, it is the duty of this court to analyze the issues under "an abuse of discretion standard of review, granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." Id. at 707. Those purposes and principles include "the imposition of a sentence justly deserved in relation to the seriousness of the offense," Tennessee Code Annotated section 40-35-102(1), a punishment sufficient "to prevent crime and promote respect for the law," Tennessee Code Annotated section 40-35-102(3), and consideration of a defendant's "potential or lack of potential for . . . rehabilitation," Tennessee Code Annotated section 40-35-103(5). State v. Carter, 254 S.W.3d 335, 344 (Tenn. 2007). The burden of showing that a sentence is improper is upon the appealing party. See Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts.; see also State v. Arnett, 49 S.W.3d 250, 257 (Tenn. 2001).

Our amended Sentencing Act no longer imposes a presumptive sentence. Carter, 254 S.W.3d at 343. Tennessee Code Annotated section 40-35-210 was amended to provide as follows:

(c) The court shall impose a sentence within the range of punishment, determined by whether the defendant is a mitigated, standard, persistent, career, or repeat violent offender. In imposing a specific sentence within the range of punishment, the court shall consider, but is not bound by, the following advisory sentencing guidelines:

(1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and

(2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

---

[5] The Bise opinion was decided after the briefs were filed in this matter.

(d) The sentence length within the range should be consistent with the purposes and principles of this chapter.

Tenn. Code Ann. § 40-35-210(c), (d) (emphasis added).

"[T]he 2005 amendments rendered advisory the manner in which the trial court selects a sentence within the appropriate range, allowing the trial court to be guided by—but not bound by—any applicable enhancement or mitigating factors when adjusting the length of a sentence." Bise, 380 S.W.3d at 706. In accordance with the broad discretion now afforded a trial court's sentencing decision,

> misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005. So long as there are other reasons consistent with the purposes and principles of sentencing, as provided by statute, a sentence imposed by the trial court within the appropriate range should be upheld.

Id.

At the sentencing hearing, the State submitted the Defendant's presentence report as an exhibit. The trial court noted that the Defendant had three prior felony convictions: aggravated sexual battery, sexual battery, and driving under the influence (DUI), fourth offense; therefore, he was a Range II, multiple offender. Because the Defendant was convicted of a Class E felony, he was subject to a sentence range of two to four years. See Tenn. Code Ann. § 40-35-112(b)(5).

The trial court noted that on April 27, 2011, the Defendant was sent to Vanderbilt for a forensic evaluation, but he refused to participate. The forensic team wrote to the court a letter, which was placed into the record, stating that after a review of the Defendant's records, the team was unable to find any mental problems that would form the basis of incompetency or insanity.

In sentencing the Defendant, the court applied enhancement factor (1), that the Defendant has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range. Tenn. Code Ann. § 40-35-114(1). The court stated that the presentence report reflected that the Defendant had thirty-four prior convictions, including convictions for assault, public intoxication, DUI, stalking, resisting arrest, reckless endangerment, and criminal trespass. The court also applied enhancement factor (8), that the Defendant, before trial or sentencing, failed to comply with the conditions of a sentence involving release into the community. Tenn. Code Ann. § 40-35-114(8). The

18

record reflects that the Defendant violated the probationary sentence he received for his DUI, fourth offense, conviction. In mitigation, the trial court applied factor (1), that the Defendant's criminal conduct neither caused nor threatened serious bodily injury. Tenn. Code Ann. § 40-35-113(1). The trial court sentenced the Defendant to four years for each offense, the maximum punishment in the range.

The Defendant argues that the trial court "erred in applying enhancing factors one and eight without taking into account any mitigation." However, the record belies this contention as the trial court stated that it was applying mitigating factor (1). The Defendant also argues that the trial court should have applied mitigating factor (8), that he "was suffering from a mental or physical condition that significantly reduced [his] culpability for the offense." Tenn. Code Ann. § 30-45-113(8). This court has explained that "while Tennessee Code Annotated section 40-35-113(8) allows a court to consider any mental condition that significantly reduced the [a]ppellant's culpability, the [a]ppellant must sufficiently establish not only the presence of a defect, but also a causal link between his ailment and the offense charged." State v. Robert James Yoreck, III, No. M2004-01289-CCA-R3-CD, 2003 WL 23613823, at *4 (Tenn. Crim. App. June 29, 2004). Although the proof at the sentencing hearing reflected that the Defendant had been treated for mental health issues, there is no evidence in the record of a specific diagnosis of mental illness. Moreover, a previous evaluation reflected that the Defendant was competent to stand trial and that an insanity defense could not be supported. See State v. Donald E. Fentress, No. M2011-01505-CCA-R3-CD, 2012 WL 5439027, at *4 (Tenn. Crim. App. Nov. 7, 2012). Accordingly, we conclude that the trial court did not err by failing to apply mitigating factor (8).

The Defendant argues that the trial court should have applied mitigating factor (3), that "[s]ubstantial grounds exist tending to excuse or justify the Defendant's criminal conduct." Tenn. Code Ann. § 40-35-113(3). Specifically, the Defendant contends that "[t]his factor would relate to th[e] fact that although no notice is ever sent to a homeless, mentally ill individual, he is still expected to register as a sex offender when the law changed." As we stated earlier, the State adduced proof at trial that the Defendant knowingly committed a violation of the sexual offender registry, thereby contradicting the Defendant's argument regarding this mitigating factor. Therefore, we conclude that the trial court did not err by failing to apply mitigating factor (3).

Given the new directive of Bise from our supreme court, upon a challenge to the sentence imposed, it is the duty of this court to analyze the issues under "an abuse of discretion standard of review, granting a presumption of reasonableness to within-range sentencing decisions that reflect a proper application of the purposes and principles of our Sentencing Act." Bise, 380 S.W.3d 707. Because the application of enhancement and mitigating factors to adjust a sentence was rendered advisory by the 2005 amendments, we

19

reiterate that the trial court may set a sentence anywhere within the applicable range so long as the sentence is consistent with the principles and purposes of the Act, regardless of the presence or absence of mitigating and enhancement factors. The trial court in this case thoroughly considered the purposes and principles of the Sentencing Act in rendering its decision; therefore, the imposition of the maximum sentence in the range is affirmed.

### B. Consecutive Sentencing

Initially, we note that the standard of review on the issue of consecutive sentencing is unclear under our State's current jurisprudence, given the recent pronouncement of our supreme court in Bise and further application of that standard to alternative sentencing determinations. See Bise, 380 S.W.3d at 708 (Tenn. 2012); see also State v. Caudle, 388 S.W.3d 273, 278-79 (Tenn. 2012). However, in the arena of consecutive sentencing, our supreme court has not issued a definitive ruling on the standard of review to be applied by this court. In response, some panels of this court are applying an abuse of discretion standard based upon the recent decisions of Bise and Caudle, while others are continuing to apply a de novo standard of review until instructed otherwise by our supreme court, and yet others are avoiding the standard of review altogether in deciding the issue. See generally State v. Robert Fusco, No. M2012-01068-CCA-RM-CD, 2012 WL 6062856, at *38-39 (Tenn. Crim. App. Dec. 06, 2012) (silent on standard of review to be applied), perm. app. denied, (Tenn. Apr. 11, 2013); State v. Eric Demond McCathern, No. M2011-01612-CCA-R3-CD, 2012 WL 5949096, at *4-5 (Tenn. Crim. App. Nov. 16, 2012) (majority applying abuse of discretion standard of review and concurring opinion advocating de novo standard of review), perm. app. denied, (Tenn. Feb. 25, 2013).

Tennessee Code Annotated section 40-35-115(b) provides that a trial court may order sentences to run consecutively if it finds any one of the following criteria by a preponderance of the evidence:

> (1) The defendant is a professional criminal who has knowingly devoted the defendant's life to criminal acts as a major source of livelihood;
> (2) The defendant is an offender whose record of criminal activity is extensive;
> (3) The defendant is a dangerous mentally abnormal person so declared by a competent psychiatrist who concludes as a result of an investigation prior to sentencing that the defendant's criminal conduct has been characterized by a pattern of repetitive or compulsive behavior with heedless indifference to consequences;
> (4) The defendant is a dangerous offender whose behavior indicates little or no regard for human life, and no hesitation about committing a crime in which the risk to human life is high;

20

(5) The defendant is convicted of two (2) or more statutory offenses involving sexual abuse of a minor with consideration of the aggravating circumstances arising from the relationship between the defendant and victim or victims, the time span of defendant's undetected sexual activity, the nature and scope of the sexual acts and the extent of the residual, physical and mental damage to the victim or victims;

(6) The defendant is sentenced for an offense committed while on probation; or

(7) The defendant is sentenced for criminal contempt.

These criteria are stated in the alternative; therefore, only one need exist to support the appropriateness of consecutive sentencing. However, the imposition of consecutive sentencing is subject to the general sentencing principles that the overall sentence imposed "should be no greater than that deserved for the offense committed" and that it "should be the least severe measure necessary to achieve the purposes for which the sentence is imposed[.]" Tenn. Code Ann. § 40-35-103(2) & (4).

In the instant case, the trial court found criterion (2), that the Defendant was an offender whose record of criminal activity is extensive. Tenn. Code Ann. § 40-35-115(b)(2). The court noted that every time the Defendant was not in custody, he committed "a constant barrage" of offenses. The court found "that he does have an extensive, extensive record that doesn't seem to stop, that nothing seems to make a difference to him." Therefore, the trial court ordered that the Defendant serve the four-year sentences consecutively for a total effective sentence of eight years.

On appeal, the Defendant acknowledges that he has numerous prior misdemeanor convictions but argues that "generally misdemeanors such as public intoxication do not suffice to order consecutive sentencing." However, this court has repeatedly rejected this argument, explaining that "Tennessee Code Annotated section 40-35-115(b)(2) does not specify that only a defendant's felony record may be taken into account." State v. Steven W. Black, No. E2010-00924-CCA-R3-CD, 2011 WL 208075, at *3 (Tenn. Crim. App. Jan. 13, 2011), perm. app. denied, (Tenn. 2011). Accordingly, this court has previously concluded that consecutive sentencing was justified when an offender's criminal record consisted of only misdemeanors. See State v. Travis Wayne Lankford, No. M2011-00319-CCA-R3-CD, 2012 WL 1377976, at *5 (Tenn. Crim. App. Apr. 18, 2012); State v. Mark Crites, No. 01C01-9711-CR-00512, 1999 WL 61053, at *6 (Tenn. Crim. App. Feb. 9, 1999). Moreover, we note that the Defendant had three prior felony convictions. Only two were required to qualify the Defendant as a Range II offender. See Tenn. Code Ann. § 40-35-106(a)(1).

The Defendant also complains that the trial court erred by imposing consecutive sentencing based upon his being a dangerous offender. See Tenn. Code Ann. § 40-35-115(4). We note that at first, the trial court stated during the sentencing hearing that it did not find the Defendant to be a dangerous offender. However, at the conclusion of the hearing, the trial court referred to "the dangerous offender Wilkerson standards" and stated, "That is absolutely part of my decision." See State v. Wilkerson, 905 S.W.2d 933, 936 (Tenn. 1995). Irrespective of whether the trial court found the Defendant to be a dangerous offender, his extensive criminal history alone justifies consecutive sentencing in this case. Thus, were we not vacating the Defendant's conviction in count two, we would conclude that based upon either standard of review, de novo or abuse of discretion, the trial court's imposition of consecutive sentencing was an appropriate sanction.

## CONCLUSION

In sum, we conclude that the evidence is sufficient to sustain the Defendant's conviction for count one but insufficient to support his conviction in count two. Therefore, we affirm the Defendant's conviction in count one and his resulting four-year sentence for that count but reverse his conviction in count two and his resulting consecutive term of four years for that count. The judgment of the trial court on count two is reversed and remanded with instructions to vacate and dismiss that charge. Accordingly, this case is affirmed in part, reversed in part, and remanded for further proceedings consistent with this opinion.

_____
D. KELLY THOMAS, JR., JUDGE